RICHARD J. STANSEL, PLAINTIFF IN ERROR, VS. AN-
DREW J. ROUNTREE AND SAMUEL S. ROUNTREE,
PARTNERS USING THE FIRM NAME OF ROUNTREE
& CO., DEFENDANTS IN ERROR.

In order to maintain a claim under the statutes of this State, to
personal property levied upon by an officer, the claimant
must at the time he institutes his proceeding, have not only
some right in the property superior to the writ levied upon it,
but he must have a right to present possession of such prop-
erty.

Writ of Error to the Circuit Court for Madison
County.

The facts in the case are stated in the opinion of the
Court.

*H. J. McCall* for Plaintiff in Error.

*W. C. McCall*, for Defendants in Error.

CARTER, J.:

On September 25, 1893, defendants in error inter-
posed a claim to certain personal property levied on by
the sheriff of Madison county under a writ of
attachment in favor of plaintiff in error, against
David Brown, June Brown, Daniel Brown and
Handy Brown, by making affidavit that said
property belonged to them, and giving bond pay-
able to plaintiff in error, conditioned as required by our
statutes. The writ of attachment does not appear in
the record, nor does the record show when it issued, nor
the date of the levy. The claim proceeding was tried
October 12, 1894, in the Circuit Court of Madison coun-
ty, and the jury found for claimant. Plaintiff in error
moved for a new trial, which was overruled, and from

the judgment entered upon the verdict sued out this writ of error.

Rountree & Co. based their claim to the property upon an instrument in writing, as follows: "Georgia, Brooks county. By the 1st day of January, after date, we or either of us promise to pay Rountree & Co. or bearer, one hundred and twenty-five and 99-100 dollars, with interest from maturity at eight *per cent. per annum*, and reasonable charges, not less than ten *per cent.* for attorney's fees, if any are incurred in the collection hereof, hereby waiving and expressly renouncing all homestead and exemption rights, for value received: One bay mare, colt and one bay horse. And to secure the payment of said indebtedness I hereby bargain, sell and convey to the payees of this note, their heirs and assigns, the following property, which is expressly declared to be my individual property, free from any lien whatever to-wit: one bay mare about thirteen years old, and colt, one roan Texas horse about four years old bo't of Mr. Theus; and Dan Brown's m'tg's one mare mule about twelve years old named Pet, and one bay mare mule about seven years old, same stock mortgage in mortgage signed with June Brown, one mouse colored Texas mule about eight years old named————mortgaged by Handy Brown; also one sorrel pony Charlie; and in case of failure to pay said indebtedness at the maturity thereof, the payees of this note, their agents, attorneys, heirs or assigns are hereby irrevocably authorized and empowered to seize and take possession of said property, and to sell the same for cash at public outcry in front of the court house door in said county, after having advertised said property at said court house door for ten days by written or printed notices, and apply the proceeds of said sale to the payment of said indebtedness and all costs of said sale, including ten *per*

*cent.* additional for further attorney's fees, and the balance, if any, to be subject to my order. And the payees of said note, their agents, attorneys, heirs and assigns are fully authorized to bid at said sale and to make a fee simple title to the said property to the purchaser or purchasers.

Witness my hand and seal this January 9th, 1893.

Signed, sealed and delivered in presence of, L. M. Rodgers, Lewis Joiner, N. P. B. C. Ga.

"Daniel Brown, L. S.
"Handy Brown, L. S."

Although the trial was had after the debt mentioned in this instrument had matured, there was nothing to show that this debt was not paid by the Browns at maturity.

Evidence intended to show that under the laws of the State of Georgia this instrument was a conveyance passing title, and not a mere mortgage with power of sale was introduced by claimants; also evidence tending to prove that the property therein described was the identical property involved in the claim proceeding. This property after the execution of the instrument above set forth remained in possession of the Browns until the claim was interposed, and it seems to have been re-delivered to the Browns by claimants after obtaining possession of same under their claim proceedings. There was no evidence to show that the property was in the State of Georgia at the time of the execution of the instrument above mentioned, but it does appear that some time in the Spring or Summer of 1893, the property was removed from Georgia to Florida by the Browns.

The only question presented for adjudication is whether the evidence is sufficient to support the verdict. Plaintiff in error contends that the conveyance to claim-

ants from the attachment defendants was a mere mort-
gage conveying no title sufficient to authorize the inter-
position of a claim.    Defendants in error contend that
the conveyance was, under the laws of the State of Geor-
gia, not a mortgage, but a deed passing title, and that the
same construction should by reason of private internat-
ional law be given to it in this State.    We regard it as
immaterial whether the instrument is to be treated as
a deed or a mortgage, because under our view of the
nature of a claim proceeding, we think it essential
that claimants should have a right of present possession
to enable them to maintain a claim to the property lev-
ied upon.    This instrument, whether deed or mortgage,
by authorizing claimants to take possession of the prop-
erty upon default in payment of the debt at maturity
impliedly leaves possession of the property with the
Browns until such default, and the parties themselves
seem to have so construed it.    No default in payment
of the debt had happened at the time the claim was in-
terposed in this case, for the debt was not then due.
In Price v. Sanchez, 8 Fla. 136, text 143, this court said
that the claim proceeding is a substitute for the action
of trespass or trover at common law, and differs only
in its being summary and not having formal pleadings.
A claimant should not be permitted to deprive an officer
of the possession of property levied upon unless his
right to possession is superior to that of the officer; nor
can he maintain trespass or trover at common law for in-
juries to, or conversion of, goods and chattels unless
he has a right to present possession of such property.
Valuable, temporary or limited interests in personal
property would be practically exempt from execution if
the ultimate owner is permitted to recover the property
from an officer before his right to reduce it to posses-
sion had accrued.    In order to maintain a claim under

our statute, the claimant must not only have some right in the property superior to the writ levied upon it, but he must have a right to present possession of such property. Freeman on Executions, § 277; Allen v. Russell, 19. Texas, 87; Willis v. Thompson, 85 Texas, 301; Kirschenschlager v. Armitage Herschel Co., 58 Mo. App. 165; Sawyer Paper Co. v. Mangan, 60 Mo. App. 76; Hamilton v. Mitchell, 6 Blackf. (Ind.) 131; Philbrick v. Goodwin, 7 Blackf. (Ind.) 18.

The judgment is reversed and a new trial granted.